**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

In re:

MATTHEW R. STEWARD and
JENNIFER L. STEWARD,

   Debtors.

_____/

Case No. HG 12-08814
Chapter 7

## <u>MEMORANDUM OF DECISION AND ORDER</u>

PRESENT: HONORABLE SCOTT W. DALES
      Chief United States Bankruptcy Judge

Chapter 7 debtors, Matthew and Jennifer Steward (the "Debtors") filed a motion to reopen their bankruptcy case (the "Motion," DN 17) to include creditors that they claim were inadvertently omitted from their original schedules. The court closed the case on April 22, 2013, after the chapter 7 trustee filed a report of no distribution and after the court entered a discharge under § 727.[1] The Cincinnati Insurance Company ("CIC"), as subrogee of Mrs. Steward's former employer, Erwin Quarder, Inc. ("Quarder"), opposes the Motion as unnecessary. The court held a hearing on April 2, 2014, in Grand Rapids, Michigan, to consider the Motion. After oral argument from counsel, the court took the Motion under advisement. For the following reasons, the court will grant the Motion.

By way of background, prior to filing for relief under the Bankruptcy Code, Mrs. Steward pled guilty in state court to embezzling funds from Quarder. As her counsel explained during the April 2, 2014 hearing, Quarder waived any claim to restitution during the criminal case in an agreement that preserved the right of Quarder's then-unnamed insurance carrier to assert a claim against her, presumably in the nature of subrogation. Whether by mistake or design, the Debtors

---

[1] In this Memorandum, statutory references shall be to title 11 of the United States Code except as otherwise indicated.

failed to list Quarder or CIC on their schedules filed on October 2, 2012. About a month later, the chapter 7 trustee conducted and concluded the creditors' meeting, filing a report of no distribution on November 8, 2012. On February 28, 2013, the court entered the discharge order and, on April 22, 2013, the Clerk entered the final decree, closing the Debtors' bankruptcy case. On October 15, 2013, CIC, as subrogee of Quarder, sued the Debtors in the Kent County Circuit Court, alleging theft, embezzlement and common law conversion against Mrs. Steward, and statutory conversion under M.C.L. § 600.2919a against both Debtors. *See* Objection and Brief in Opposition to Debtors' Motion to Reopen Bankruptcy to Add "Unknown Creditor" (the "Objection," DN 20) at Exh. D (Complaint filed in Kent County Circuit Court, Case No. 13-09891-CB).

Under § 350(b), "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Here, the Debtors move to reopen the case in order to seek relief from CIC's state court lawsuit, relying largely on the Sixth Circuit's opinion in *Zirnhelt v. Madaj (In re Madaj)*, 149 F.3d 467 (6th Cir. 1998). Under *Madaj*, in a "no asset case" like the Debtors', the claims of most omitted creditors are discharged, notwithstanding § 523(a)(3), because creditors in a no asset case receive no distribution anyway. The conclusion that a creditor's claim may be discharged even if a creditor does not get notice of the bankruptcy may seem counter-intuitive,[2] or contrary to notions of due process,[3] but it stems from the Sixth Circuit's careful parsing of § 523(a)(3) which provides, in relevant part, as follows:

---

[2] *First Place Bank v. Casino Concepts by Design, Inc.*, No. 30683, 2013 WL 331572 (Mich. App. Jan. 29, 2013) (declining to follow *Madaj*).

[3] *Lampe v. Kash*, 735 F.3d 942 (6th Cir. 2013) (service on creditor's former counsel is not good notice of bankruptcy and therefore claim of unserved creditor is not discharged). Although the *Lampe* opinion is difficult to square with *Madaj*, the court concludes that *Madaj* survives notwithstanding *Lampe* because *Madaj* is a published opinion and in our Circuit, "[a] published opinion is overruled only by the court *en banc*." 6 Cir. R. 32.1(b).

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt —

. . .

(3)  neither listed nor scheduled under 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owned, in time to permit—
    (A)  if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
    (B)  if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request . . . .

11 U.S.C. § 523(a)(3).  When the omitted creditor holds an ordinary unsecured claim *not* "of a kind" described in § 523(a)(2), (4), or (6), the application of § 523(c) is straightforward:  "the moment the creditor receives notice or knowledge of the bankruptcy case, § 523(a)(3)(A) ceases to provide the basis for an exception from discharge."  *Madaj*, 149 F.3d at 470.  In no-asset cases involving ordinary claims, the court routinely issues its so-called "*Madaj* Order" to assist debtors and creditors in understanding the consequences of the omission from the schedules.

Where, however, the claims of the omitted creditors are arguably claims of the kind described in § 523(a)(2), (4), or (6), the analysis becomes more circular.[4]  Under § 523(c), only the federal courts have authority to declare a debt excepted from discharge under § 523(a)(2), (4), or (6):

---

[4] Section 523(a)(3) is circular because before the parties can know for certain whether § 523(a)(3)(A) or (a)(3)(B) applies, they must first determine whether the debt is "of a kind specified in paragraph (2), (4), or (6)" or not.  In most cases, ordinary contract debts, such as those related to credit cards or medical bills, unquestionably fall within § 523(a)(3)(A).  Closer calls, however, present problems for the parties and the court.  In other words, the Code provides that claims of a kind described in § 523(a)(2), (4), or (6) are excepted from discharge if the creditor holding such claims did not have knowledge of the bankruptcy in time to seek a determination from the bankruptcy court that its claims were of a kind described in § 523(a)(2), (4), and (6), but if the creditor doesn't have notice in time to seek a determination by the bankruptcy court, how is one to know which subsection applies in a close case?

> (c)(1)  Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, *the court* determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

11 U.S.C. § 523(c) (emphasis added).  Interpreting "the court" to refer to the bankruptcy court in which the debtor's case is pending prompted the federal courts to conclude that Congress bestowed on the federal forum the exclusive authority to determine whether a debt is discharged under § 523(a)(2), (4), or (6).  *See Dollar Corp. v. Zebedee (In re Dollar Corp.)*, 25 F.3d 1320, 1325 (6th Cir. 1994).  Unless a creditor timely files a request to except a debt of this kind from discharge *in the bankruptcy court*, the debt will be discharged.

As the statutory text expressly notes, however, the exclusivity inherent in § 523(c) is subject to an important exception, namely the provisions of § 523(a)(3)(B) — for debts "of a kind specified in paragraph (2), (4), or (6) of subsection (a)" held by omitted creditors.  In other words, although the federal court has exclusive authority to except a debt from discharge under those Code sections, it shares authority with the state courts to determine whether a debt is excepted from discharge under § 523(a)(3)(B), even if this means a state court has to decide whether the debt falls within § 523(a)(2), (4), or (6).  Indeed, the Michigan Court of Appeals so held in the *First Source Bank* case noted above, albeit in a manner at odds with the Sixth Circuit's interpretation of the statute.  *See First Place Bank v. Casino Concepts by Design, Inc.*, No. 30683, 2013 WL 331572 (Mich. App. Jan. 29, 2013).

The applicable provisions of title 28 confirm the concurrent authority of the state courts[5] to hear proceedings related to bankruptcy cases.  *See* 28 U.S.C. § 1334(b)(". . . the district courts

---

[5] State courts, unlike their federal counterparts, may enjoy inherent, general jurisdiction.  Federal courts, in contrast, are courts of limited jurisdiction, dependent upon Congressional authority to act.

shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."); *cf.* 28 U.S.C. § 1452(b) (authorizing remand of removed actions). This means that a debtor who omits a creditor from his or her schedules runs the risk that the creditor's claim will be excepted from discharge under § 523(a)(3)(B) and that a court other than the United States Bankruptcy Court may be called upon to make that determination.[6]

Despite the concurrent state court jurisdiction over the dispute between the Debtors and CIC, leaving the matter in the state court's hands may present difficulties for the state court and for the parties.

For the state court, even though title 28 does not preempt its jurisdiction, its authority in matters involving the discharge is not without limits, making it difficult for the court to know how to proceed. For example, although a state court has authority to determine the scope of the discharge, it only has the authority to determine the scope of a bankruptcy discharge if it gets the answer right. *Hamilton v. Herr (In re Hamilton)*, 540 F.3d 367, 375 (6th Cir. 2008) ("state courts are allowed to construe the discharge in bankruptcy, but what they are not allowed to do is construe the discharge incorrectly, because an incorrect application of the discharge order would be equivalent to a modification of the discharge order."). It is not surprising that many state court judges are reluctant to wade into the discharge quagmire.

For the Debtors, the divergence of opinion regarding the meaning of § 523(a)(3) between the Michigan Court of Appeals, as expressed in *First Source Bank*, and the Sixth Circuit, as expressed in *Madaj*, could affect the outcome of this dispute, at least as it pertains to Mr.

---

[6] The bankruptcy court's removal jurisdiction, if timely invoked, may give a debtor a chance to move the dispute to the federal forum. 28 U.S.C. § 1452; Fed. R. Bankr. P. 9027(c) (parties shall proceed no further in state court after notice of removal is filed there).

Steward.[7]   For CIC, it runs the risk that it may have to litigate in two courthouses, imposing additional expense and uncertainty, and the prospect of inconsistent results.

At the end of the day, the only question the Motion requires the court to answer is whether there is cause to reopen the case under § 350(b).  The complexities described above should not obscure the fact that the parties are embroiled in a controversy involving the scope of the Debtors' discharge, a matter within this court's concurrent jurisdiction.  In order for the court to make that jurisdiction available in order to accord relief to the Debtors, the court must reopen the case. The court will reopen the case for sixty days for this purpose.

In reaching this conclusion, however, the court is not dictating which of the two courts will ultimately be called upon to resolve the dispute; either party may file a complaint in the Bankruptcy Court within the time allotted, or they may continue their litigation in the Kent County Circuit Court.  Nevertheless, for the sake of their respective clients and as a matter of judicial economy (state and federal), the court encourages counsel to confer in an effort to agree upon a single forum.

If, however, neither party commences an adversary proceeding within the time allowed or as extended by court order, the Clerk will again close the case without a determination of dischargeability of CIC's claims.  Regardless, the Kent County Circuit Court remains free to exercise its concurrent jurisdiction to determine the amount and dischargeability of CIC's claims.

Finally, the court has determined, given the nature of the relief requested, that it is unnecessary for the United States Trustee to reappoint a trustee, and that the Clerk shall not

---

[7] At the hearing, Debtors' counsel conceded that Mrs. Steward's guilty plea likely establishes the non-dischargeable nature of CIC's claim against her, though the amount of the debt remains at issue.  Mr. Steward did not embezzle from Mrs. Steward's former employer, but CIC alleges, upon information and belief, that he "received and possessed, and/or assisted Mrs. Steward in the receipt and possession of, the money Mrs. Steward stole, embezzled and converted from Quarder." *See* Objection at Exh. D, ¶ 14.

collect any reopening fee.  *See* Fed. R. Bankr. P. 5010; 28 U.S.C. § 1930 appendix (Bankruptcy Court Miscellaneous Fee Schedule at ¶ 11).

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion is GRANTED for the limited purpose of permitting any of the parties to file an adversary proceeding seeking a determination that CIC's claims are excepted from discharge under § 523(a)(3), or not.

IT IS FURTHER ORDERED that the Clerk shall not require or collect a fee for reopening the case.

IT IS FURTHER ORDERED that if no one files a complaint with this court within sixty days after entry of this Order, the Clerk shall close the case without further order and without a determination of the dischargeability of the CIC claims.

IT IS FURTHER ORDERED that nothing in this Order shall be construed to limit the concurrent jurisdiction of the courts of the State of Michigan to determine any and all issues between the parties relating to CIC's claim and the Debtors' discharge.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Christian G. Krupp, II, Esq., attorney for the Debtors, Sandra J. Densham, Esq., and Mark H. Verwys, Esq., attorneys for Cincinnati Insurance Company, and the office of the United States Trustee.

IT IS FURTHER ORDERED that the Clerk shall deliver a courtesy copy of this Order to the Honorable Christopher P. Yates, Kent County Circuit Judge.

[END OF ORDER]

**IT IS SO ORDERED.**

**Dated April 4, 2014**



Scott W. Dales
United States Bankruptcy Judge